## Hiram Williston *vs.* Isaac Morse.

A town voted that certain land, claimed by the town, be sold at auction to the highest bidder, and that a committee of three be authorized to sell it, and to give a warranty deed thereof to the purchaser: One of the committee, who was not a licensed auctioneer, sold the land at auction to A., who was the highest bidder: A. refused to take a deed of the land, but consented that B. might take the land at A.'s bid; and the committee thereupon made a deed of the land to B., in behalf of the town. *Held,* that the illegal act of the auctioneer, in selling the land without being licensed, did not affect the conveyance to a purchaser who did not know that the auctioneer was not licensed; that the sale was substantially in pursuance of the vote of the town; and that the deed to B. was a valid conveyance of the title of the town.

The town of R., having no title to land besides a survey thereof, and an entry thereon, under a claim of title, conveyed the land to A. by deed of warranty, and A. sued B. for a subsequent trespass upon the land. *Held,* that A. could not maintain the action, if B., prior to the date of the entry and deed of the town, had possession of the land, claiming title.

Land was described, in different deeds, as bounding "on the mountain," and "by the mountain," and "the foot of the mountain." *Held,* in the particular case, that these words were too indefinite and uncertain to control the courses, distances, and other references in the deeds, descriptive of the land. *Held also,* that it was a question, depending both on law and fact, whether these words excluded or included a certain part of the mountain, and that this question should have been submitted to a jury, under such directions from the court, as to the rules of construction, as were applicable to the case. *Held also,* that it might be important, in order to decide this question, to ascertain the location of adjoining lots of land.

Trespass for breaking and entering the plaintiff's close in Russell. The defendant filed the following specification of

2 *

defence :   1st. That the soil and freehold of that part of the close, in which the acts complained of were done, were in the defendant.   2d. That said part of the close was the soil and freehold of Chauncey W. Morse, and that any acts, done thereon by the defendant, were done under the direction of said Chauncey W., or by license from him.   3d. That said close was the soil and freehold of Albert Morse, and that any acts, done thereon by the defendant, were done by the direction or under license of said Albert.                •

The trial was in the court of common pleas, before *Ward,* J. who signed a bill of exceptions, to the following effect :   The plaintiff gave in evidence several votes of the town of Russell concerning lands claimed by the town.   Among these votes were the following, passed on the 14th of June, 1842 :   " Voted, that the land claimed on Tekoa be sold at auction, to the highest bidder, reserving the right of action for trespass heretofore committed on said land.   Voted, that Jere Bishop, Charles Tinker and Vestus Parks serve as a committee to sell the said land.   Voted, that the town will give warranty deeds to purchasers of said land.   Voted, that said committee sell the claim on Shatterack, on the same conditions, giving a warranty deed and reserving the right of action for damages done by trespassers.   Voted, that said committee be authorized to make and execute deeds of said lands in behalf of the town."   Also the following vote, passed on the 6th of August 1842 :   " Voted, that the committee sell the land which they have surveyed on the north side of Westfield River, supposed to belong to Russell."

The plaintiff then offered in evidence a deed of the inhabitants of Russell, dated September 10th 1840, executed by said Jere Bishop, Charles Tinker and Vestus Parks, in behalf of said inhabitants, conveying to the plaintiff, his heirs and assigns forever, with covenants of seizin and warranty, " a certain tract of land situated in Russell, bounded as follows, to wit, beginning at line between the towns of Russell and Montgomery, at the south end, near the Westfield Great River Feeder Trunk, and running north, seven degrees and

sixteen seconds west, 8.25 chains to the N. W. side of a stone quarry recently opened, and on the bank of the feeder , thence," by various courses and distances, " to place of beginning ; containing sixty one acres, be the same more or less."

It appeared in evidence that one of said committee, who was not a licensed auctioneer, sold said land at auction; that the person, to whom it was struck off as the highest bidder, refused to take a deed of it, but consented that the plaintiff might take the land at his bid; and that the deed was accordingly made to the plaintiff. The defendant thereupon objected to the admission of the deed in evidence ; 1st, because the sale, not being made by a licensed auctioneer, was in violation of the Rev. Sts. *c.* 29 ; 2d, because the deed was not made pursuant to the votes of the town. But the judge overruled the objections, and the deed was admitted in evidence.

The defendant introduced evidence tending to show, that prior to the date of the plaintiff's deed, he (the defendant) had exclusive possession of that part of the close described in the plaintiff's writ, where the trespass was alleged to have been committed; that the whole tract was unenclosed woodland; and that the possession consisted of cutting and drawing away wood, at various times.

The plaintiff introduced evidence tending to show that wood was cut on or near the same place by G. Drake, and that the town of Russell had caused the land to be surveyed, claiming title thereto. He also gave evidence of acts of cutting, by Chauncey W. Morse, earlier than any of said acts of Drake, or of the town of Russell.

The defendant requested the judge to instruct the jury, that if he had shown a possession in himself, or in Chauncey W. Morse, of an earlier date than the plaintiff's deed, it was sufficient to preclude the plaintiff from maintaining his action ; he not having shown an older possession, or other title than that derived from his deed from the town of Russell. The judge, however, instructed the jury, that if Chauncey W. Morse had exclusive possession of the land, at the time the plaintiff took his deed, this action could not be maintained;

but if no person had exclusive possession thereof, and the defendant and other persons had severally committed acts of trespass thereon, this would give the defendant no such possession as would defeat the plaintiff's deed; that if the inhabitants of Russell had no title, yet if they had entered, claiming title, and made this deed to the plaintiff, and no title in any other person had been proved, then the plaintiff, entering under a paper title duly recorded, could maintain trespass against any persons who should afterwards enter upon the premises without title, even though they had committed acts of trespass thereon earlier than his grantors; unless the title was shown to be in some one else.

The defendant claimed title under several deeds and locations of lands by original proprietors; viz. the deed of Jonathan Herrick, collector of taxes in Montgomery, dated April 18th 1785, reciting a tax on a lot of land laid out to Nathaniel Phelps, and a sale of said lot at auction, to Richard Falley, for non-payment of said tax. This lot was described in said deed, as bounding "south-west on Tekoa Mountain:" Also a deed of Joshua Whitney and Anna Whitney, to John Shepard, jr. dated May 22d 1770, conveying two tracts of land in (then) Westfield,* one of them containing 170 rods, and bounded "westerly, partly on Tekoa Mountain, and partly by the river:" Also a deed from said Richard Falley, to Martin Bartholomew, dated February 20th 1815, conveying 170 acres, more or less, of land lying in Montgomery and Westfield, bounded "west and north on Israel Hutchinson's heirs, Shubael Holcomb, and Tekoa Mountain." (Several other deeds were given in evidence, and also certain locations, which are referred to in the opinion of the court.) The defendant contended that the description in these deeds and locations included the mountain; and the plaintiff contended that description excluded the mountain. It appeared that the *locus*, described in the plaintiff's writ, was situated on the

---

* Montgomery was incorporated as a town, November 28th 1780, and Russell, February 25th 1792. See 1 Special Laws, 1, 341, where the boundaries of these towns are set forth.

summit and westerly slope of the mountain. The judge instructed the jury, that said description excluded the mountain, so far as it applied to the present case. The jury found a verdict for the plaintiff, and the defendant alleged exceptions to the aforesaid rulings and instructions.

*Leonard & W. G. Bates*, for the defendant. 1. The deed from the committee of the town to the plaintiff is not the deed of the town. The town voted that the land should be sold at auction, to the highest bidder. This vote contemplated a licensed auctioneer, and not a sale which is declared " a mis-demeanor " by the Rev. Sts. *c.* 29, § 7. The highest bidder was not the plaintiff, nor the agent of the plaintiff; and his consent that the plaintiff might take the land did not relate back to the time of the sale, so as to constitute him the plaintiff's agent. As the plaintiff's evidence shows that his deed was not so executed as to convey the interest which the town intended to convey, the deed is not equivalent to livery and seizin, and does not exhibit a *primâ facie* title in the plaintiff, as would the deed of an individual, duly executed.

2. The instruction that, " if the defendant and other persons had severally committed acts of trespass on the land, this would give the defendant no such possession as would defeat the plaintiff's deed," was not of such a definite nature as to lead the jury to a correct result. The instruction should have been such as to inform the jury what constituted a trespass. The town had no pretence of title to the land, except from their entry, after the defendant's occupation thereof, for the purpose of surveying it; and this entry was itself a trespass on the defendant. 3 Stark. Ev. 1436. The land in question was on the summit and western slope of the mountain; all the acts, therefore, which the defendant should have been required to show, in order to establish his possession, were the cutting and drawing away of the wood. If the land had been susceptible of cultivation, further proof of possession might, perhaps, have been rightly required. The instructions which the defendant requested should have been given. *Inhabitants of Barnstable* v. *Thacher*, 3 Met. 242. *Cook* v. *Rider*,

16 Pick. 188.   *Jackson* v. *Widger*, 7 Cow. 723.   If the defendant was bound to prove a technical disseizin, yet the instructions were too comprehensive.   *Poignard* v. *Smith*, 6 Pick. 178.

3. The term "mountain," when used as a boundary, is indefinite ; and the jury should not have been instructed that the mountain was excluded.   The courses, distances, and description of the lands of contiguous owners were safer guides for the jury, and they should have been left to decide this question by the help of those guides.

*Boise*, for the plaintiff.   1.   The fact that the land was not sold by a licensed auctioneer cannot affect the title of an innocent purchaser.   The deed to the plaintiff does not show that the land was sold at auction ; and the plaintiff has nothing to do with a sale at auction.   The Rev. Sts. *c.* 29, do not declare a sale at auction, by one not licensed as an auctioneer, to be void, nor impair the buyer's title.   See *White* v. *Franklin Bank*, 22 Pick. 187, 188.   The defendant, who is a mere stranger, has no right to call in question the validity of the plaintiff's title.   Even if the deed was void as between the parties to it, it is nothing to the defendant ; and the plaintiff, claiming under it, may maintain trespass against him.   *Brown* v. *Pinkham*, 18 Pick. 174.   *Graham* v. *Peat*, 1 East, 244.

2. The instructions to the jury were conformable to the law laid down, nearly forty years ago, in *Proprietors of Kennebec Purchase* v. *Springer*, 4 Mass. 416.   The plaintiff entered on the land, claiming title by deed, and took possession.   His seizin, therefore, extended to the whole parcel.   The town had surveyed the land before the deed was given to the plaintiff, and had thereby claimed title.   This would have been a disseizin of any person having a better title, by disseizin or otherwise ; and the deed to the plaintiff gave him a good title against every body but the true owner.   *Warren* v. *Childs*, 11 Mass. 222.   *Tyler* v. *Hammond*, 11 Pick. 193.   *Ward* v. *Fuller*, 15 Pick. 185.   *Lawrence* v. *Russell*, 17 Pick. 388.   *Slater* v. *Rawson*, 6 Met. 439.   The defendant never entered

on the land, claiming title to any part of it.  He never had any continued possession.  If some of his acts of trespass were prior to the date of the deed given by the town to the plaintiff, and to the plaintiff's possession under it, yet he had no such possession as would give him a seizin against one claiming under a higher title, such as a deed, and an entry and possession under it.  In the cases cited for the defendant, from 3 Met. and 16 Pick. there was a mixed or concurrent possession, without any paper title in either party, and an entry and acts of possession, on both sides, without claim of title or exclusive occupation.

3. No one of the deeds under which the defendant claims covers the land in question.  They all bound the land therein conveyed " on the mountain," or " by the mountain," or " the foot of Tekoa Mountain ; " words which exclude, instead of embracing, the whole of the mountain.

The decision was made at September term 1846.

WILDE, J.  The plaintiff, in support of his title to the *locus in quo*, introduced a deed to him, executed by a committee of the town of Russell, purporting to convey the land therein described, including the *locus*, with the usual covenants of seizin and warranty.  It was objected by the defendant's counsel, that this deed was void, because it was made in pursuance of a sale at auction by one of the committee, who was not a licensed auctioneer ; or, if it was not so made, then that the committee were not authorized to make the sale.  These objections were overruled at the trial, and the deed was admitted in evidence ; and we think that this ruling was well founded.  This sale, strictly speaking, was not a sale at auction ; for the person to whom it was struck off refused to take a deed.  But if the deed had been made to him, it would have been a valid sale, although the member of the committee, who sold the property at auction, were liable therefor to a penalty.  The illegal act of the auctioneer, in selling or offering to sell property at auction, without being licensed, will not affect the conveyance to an innocent purchaser without knowledge that the auctioneer had not been licensed.

As to the other objection, that the conveyance was not made in pursuance of the authority given to the committee, we think the sale was substantially in pursuance of the vote of the town. The only object of directing the land to be sold at auction must have been to ascertain the highest price any purchaser would offer; and this was ascertained, and the property was struck off to the highest bidder. And it was immaterial whether the conveyance was afterwards made to him, or to some other person with his consent.

But, although we consider this deed to the plaintiff as a valid deed, yet nothing passed by it except the title of the town of Russell; and all the title they had was by an entry into the premises, claiming title thereto, and causing the same to be surveyed previously to their conveyance to the plaintiff. On the other hand, the defendant proved that he and Chauncey W. Morse, under whom he claimed title, had possession of the premises previously to any entry by the town of Russell; and upon this evidence, the counsel for the defendant requested the court to instruct the jury that, if the defendant had shown a possession in himself or Chauncey W. Morse, of an earlier date than the plaintiff's deed, that was sufficient to preclude the plaintiff from maintaining this action. The court declined so to instruct the jury, but instructed them that the action might be maintained, although the defendant, or the said Chauncey W. Morse, had committed acts of trespass on the premises, earlier than the entry and survey by the town of Russell.

These instructions, as it seems to us, had a tendency to mislead the jury, and to withdraw their attention from the real question of title upon which the case depends. The evidence on the part of the defendant had a tendency to prove that he entered into the premises claiming title; and if so, then such entry, although he had no valid title, and although the entry would be a trespass against the true owner, would, nevertheless, be sufficient to establish a legal possession against any one who should afterwards enter upon him without right or any previous possession.

It has been argued for the plaintiff, that the deed from the town of Russell to the plaintiff vested in him a good title against every person but the true owner ; and that it could not be avoided by a stranger, who sets up no title but by acts of possession. Several authorities were cited in support of this position, but they entirely fail to support it. On the contrary, an opposite doctrine was laid down in the case of *Slater* v. *Rawson*, 6 Met. 439, and in other cases there cited. The doctrine is well settled, that a party may enter on land without title, and may acquire a title by possession, by acts which would not constitute a disseizin of the true owner ; and that such a possessory title is valid against all persons who cannot prove an elder and better title. Much too great stress is laid, by the plaintiff's counsel, on the deed from the town. He contends that the deed is presumptive proof of a legal title in the town ; and he relies on the case of *Ward* v. *Fuller*, 15 Pick. 187. It is, indeed, laid down in that case, by the learned judge who delivered the opinion of the court, that in the absence of other evidence, the deed itself raises a presumption that the grantor had sufficient seizin to enable him to convey, and also operates to vest the legal seizin in the grantee. This is true, undoubtedly, as to ancient deeds, such as were given in evidence in that case. Whether it is true, also, as to recent deeds, may be more doubtful. But it is not necessary to discuss that question in the present case ; for there is no doubt the town of Russell had a sufficient seizin to enable them to convey the premises to the plaintiff, as they had, before the conveyance, taken a survey of the land, claiming title, and that was a sufficient seizin and possession to enable them to pass their title to the plaintiff. Nothing, however, but their title, could pass thereby. The plaintiff, by entry under his deed, might acquire a legal seizin against all persons not having a prior title. And the plaintiff has no better title than the town of Russell had. If the defendant, therefore, had a prior possession, this action cannot be maintained. It is denied by the plaintiff that the defendant had any such possession, or that, if he had, it would avail him

against the plaintiff, who claimed under a deed and entry and possession. Whether the defendant had a prior possession or not, was a question of fact for the jury ; and if he had such a possession, this action certainly cannot be maintained. We think, therefore, that the jury should have been so instructed, according to the request of the defendant's counsel.

Another exception was taken to the instructions, which appears to us to be well founded. The defendant claimed title under several deeds and locations of land by original proprietors, and contended that the descriptions in those deeds and locations included the mountain, or a part of the mountain, therein named. But the court instructed the jury that the description excluded the mountain, so far as it applied to the present case. This decision, we suppose, was founded on the well established rule of construction of deeds, that where the land conveyed is described by courses, distances and monuments, and they do not correspond, the monuments must govern and control the courses or distances, on the ground that the former are less liable to mistakes than the latter. But this, like other general rules of law, is not without some exceptions ; as was decided in *Davis* v. *Rainsford*, 17 Mass. 210. In the description of the lands, in the deeds and locations in question, they are bounded partly "by the mountain," or "on the mountain," or "the foot of the mountain." These references we consider as too indefinite and uncertain to control the courses and distances, and other references, by which these lots are described. The foot of the mountain is the most definite reference. But the foot of a mountain may, in many cases, be uncertain ; the rise being so gradual and inconsiderable. The other references are still more loose and indefinite. A mountain lot may be described as bounding on all sides by the mountain. So, if a lot is described as beginning at known monuments, and extending, according to the courses and distances named, far up the side of a mountain, or to its summit, and is there bounded "by the mountain," or "on the mountain," there would be no necessary inconsistency in the description, so as to render the construction doubtful.

In all deeds of conveyance of lands, the first rule of construction is, that they are to be construed according to the intention of the parties; and to ascertain that intention, the whole description of the land conveyed is to be considered, and so construed that all the parts of the description may correspond, if they may by any reasonable intendment. Whether, according to these rules, the defendant's deeds would include or exclude the *locus*, we have not the means of deciding; but, so far as we are able to judge, we consider the question as depending both on law and fact, and consequently it is to be submitted to a jury, under the direction of the court as to such rules of construction as may be found applicable. It seems important to ascertain which of the two plans, used at the trial, describes the lots truly. So it may be important to ascertain the location of other lots adjoining that claimed by the defendant. And these are questions of fact within the province of the jury alone to decide.

*New trial granted.*