MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:       2016 ME 34
Docket:         BCD-15-30
Argued:         December 9, 2015
Decided:        February 23, 2016

Panel:          SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HJELM, JJ.

OCEANIC INN, INC., et al.

v.

SLOAN'S COVE, LLC

GORMAN, J.

[¶1]   Oceanic Inn, Inc., and Armand A. Vachon (collectively, "Oceanic") appeal from a comprehensive judgment entered in the Business and Consumer Docket (*Horton, J.*) on their complaint against Sloan's Cove, LLC, and on Sloan's Cove's counterclaim.   Oceanic filed suit after Sloan's Cove executed a power of sale foreclosure on Vachon's real property in Old Orchard Beach, claiming that Sloan's Cove conducted the sale improperly.   On appeal, Oceanic challenges the dismissals of its claims for breach of fiduciary duty and negligent infliction of emotional distress, and argues that the court also erred in entering summary judgments in Sloan's Cove's favor on Oceanic's claims for breach of contract and accounting and on Sloan's Cove's counterclaim for a declaratory judgment.   After amending the judgment to correct a clerical error, we affirm.

## I. BACKGROUND

[¶2] In September of 2013, Oceanic filed its eleven-count complaint against Sloan's Cove in the Superior Court (York County), alleging various tort and contract claims based on Sloan's Cove's conduct in connection with the foreclosure by sale of Vachon's property. Among other causes of action, Oceanic claimed breach of fiduciary duty, negligent infliction of emotional distress, breach of contract, and an "action for accounting."[1]

[¶3] With its answer, Sloan's Cove filed a counterclaim seeking a declaration that its foreclosure by sale of the Oceanic Inn property was legal and effective. Soon thereafter, pursuant to M.R. Civ. P. 12(b)(6), Sloan's Cove filed a motion to dismiss all of Oceanic's claims except the action for accounting. After the case was transferred to the Business and Consumer Docket, the court (*Horton, J.*) granted Sloan's Cove's motion as to nine of Oceanic's claims, including breach of fiduciary duty and negligent infliction of emotional distress, and denied the motion only as to Oceanic's breach of contract claim.

[¶4] Sloan's Cove then sought summary judgments on its counterclaim and on Oceanic's breach of contract claim, and included with its motion for summary

---

[1] Oceanic also alleged breach of duty of good faith and fair dealing, tortious interference with prospective economic advantage, slander of title, fraud, negligent misrepresentation, fraudulent transfer, and violation of the Unfair Trade Practices Act, 5 M.R.S. §§ 205-A to 214 (2015). Oceanic does not challenge the trial court's dispositions of these claims.

judgment a supporting statement of eighteen material facts, each with a reference to supporting evidence. *See* M.R. Civ. P. 56(h)(1). In opposing the motion, Oceanic responded to Sloan's Cove's statements of fact and included a statement of additional facts containing 145 statements with record citations.[2] *See* M.R. Civ. P. 56(h)(2). Sloan's Cove replied to Oceanic's opposition, *see* M.R. Civ. P. 56(h)(3), objecting to most of Oceanic's additional facts as both irrelevant and unsupported by the record. After reviewing the parties' submissions and holding a hearing, the court granted Sloan's Cove's motion, leaving only the action for accounting to be adjudicated.

[¶5] A single set of facts provided the basis for the court's decisions as to both (1) Sloan's Cove's motion to dismiss and (2) Sloan's Cove's motion for summary judgments on Oceanic's breach of contract claim and Sloan's Cove's counterclaim. Although we apply different standards of review to Oceanic's separate challenges to the court's decisions at each of these two stages, in both instances, we view, respectively, the allegations in Oceanic's complaint, and the facts established by the summary judgment record in the light most favorable to

---

[2] Contrary to M.R. Civ. P. 56's directives, *see* M.R. Civ. P. 56(h)(2), many of the entries contained multiple assertions of fact and many consisted solely of legal argument. Oceanic's 145-paragraph response to the eighteen-paragraph statement of material facts was nonresponsive, excessive, unnecessary, and unhelpful. The court would have been justified in disregarding it. *See First Tracks Invs., LLC v. Murray, Plumb & Murray*, 2015 ME 104, ¶¶ 2-3, 121 A.3d 1279 (per curiam); *Stanley v. Hancock Cty. Comm'rs*, 2004 ME 157, ¶¶ 27-29, 864 A.2d 169.

4

Oceanic. *See, e.g.*, *Remmes v. Mark Travel Corp.*, 2015 ME 63, ¶ 3, 116 A.3d 466 (viewing the summary judgment record in the light most favorable to the nonprevailing party); *Ramsey v. Baxter Title Co.*, 2012 ME 113, ¶ 6, 54 A.3d 710 (viewing the complaint in the light most favorable to the plaintiff in an appeal from a Rule 12(b)(6) dismissal). Viewed in the light most favorable to Oceanic, therefore, the record establishes the following set of facts.

[¶6] In 2006, a real estate investment company operated by Georgette and Gerard Proulx, Vachon's mother and stepfather, executed a promissory note in favor of TD Banknorth in the amount of $578,000. The note provided that it would be "governed by, and interpreted and construed in accordance with, the laws of the State of Maine." As the officers of Oceanic Inn, Inc., the Proulxes also executed a guaranty of the note and a mortgage on the Oceanic Inn property that secured the note and the guaranty in favor of TD Banknorth. The mortgage gave the bank and its assigns a statutory power of sale upon default. *See* 14 M.R.S. § 6203-A (2012); 33 M.R.S. § 501-A (2012).[3]

[¶7] In 2007, Vachon became the owner of the Oceanic Inn property. Two years later, Sloan's Cove, LLC, which is solely owned by Pauline Beale,

---

[3] The 2012 publication of the Maine Revised Statutes contained the statutes in effect when Sloan's Cove conducted the auction at issue and when Oceanic filed its complaint. The power of sale statutes have since been amended. P.L. 2015, ch. 147, § 1 (effective Oct. 15, 2015) (codified at 14 M.R.S. § 6203-A (2015)); P.L. 2015, ch. 147, § 7 (effective Oct. 15, 2015) (codified at 33 M.R.S. § 501-A (2015)).

Vachon's sister, paid off Oceanic's debt. As part of that transaction, Vachon and Sloan's Cove entered into an "allonge and modification agreement," pursuant to which Vachon became the sole obligor under the note and agreed to make interest-only monthly payments for two years before paying all the remaining principal and interest in a single balloon payment of $284,500, and TD Banknorth assigned the mortgage securing the note to Sloan's Cove. Although he apparently made the monthly payments for the next two years, Vachon did not make the balloon payment when it became due in November of 2012.

[¶8] In December of 2012, after it defaulted, Oceanic Inn, Inc., filed a Chapter 11 bankruptcy petition in an attempt to forestall foreclosure by Sloan's Cove. Using funds from her and Vachon's mother's estate, Beale, acting through Sloan's Cove, purchased the claim held by the largest general unsecured creditor of Oceanic Inn, Inc., and was thereby able to block the reorganization plan.[4] The bankruptcy petition was dismissed on August 7, 2013.

[¶9] Sloan's Cove decided to proceed to foreclosure by sale, and its attorney, Daniel Cummings, prepared a sale notice, which he sent to Vachon via registered mail. The sale notice listed the address of the Oceanic Inn property and

---

[4] For several years, Vachon and Beale have been engaged in contentious probate litigation regarding their mother's estate. Beale is the estate's personal representative, and is not named as a beneficiary. Vachon and his stepfather, Gerard Proulx, are the named beneficiaries.

the book and page number of the mortgage, and stated that the auction was to occur at 9:30 a.m. on September 13, 2013. It was recorded in the York County Registry of Deeds and was published in the Portland Press Herald on August 19, August 26, and September 2, 2013.

[¶10] Hoping to stop the sale, Oceanic Inn, Inc., filed a second Chapter 11 bankruptcy petition during the morning on the day the auction was to occur. Several potential bidders attended the auction later that morning, and three people registered to bid; each paid a $25,000 deposit. Cummings told the potential buyers that Oceanic Inn, Inc., had filed a bankruptcy petition, but that he believed he could nonetheless proceed with the auction. Although he did not share the information with either the bidders or with Vachon, Cummings had earlier determined that Vachon, and not Oceanic Inn, Inc., was the true owner of the property. Thus, a bankruptcy filing by Oceanic Inn, Inc., would not prevent the sale from proceeding.

[¶11] Cummings, who is a licensed Maine attorney but not a licensed auctioneer, went forward with the auction that day. Sloan's Cove opened the bidding at $345,000, and two of the registered bidders bid actively on the property

up to the winning bid of $455,000. The winning bidder signed a purchase and sale agreement.[5]

[¶12] After the court granted Sloan's Cove's motion for summary judgment, the sole remaining claim to be adjudicated was Oceanic's "action for accounting." Sloan's Cove moved for summary judgment on that claim as well, asserting that it was owed interest and attorney fees based on provisions in the original note and the allonge.

[¶13] The summary judgment record concerning the accounting claim establishes the following facts, which we view in the light most favorable to Oceanic. *See Remmes*, 2015 ME 63, ¶ 3, 116 A.3d 466. The original note called for a 7.47% annual interest rate as well as a 6% annual "default interest rate" over and above "the rate of interest otherwise payable." The allonge provided for an interest rate of "the Wall Street Journal Prime Rate plus three percent[], adjusted monthly," and did not refer to any "default" rate. Sloan's Cove asserted that the allonge left the original note's "default" interest rate intact while changing the regular interest rate from 7.47% to the prime rate plus 3%; Oceanic asserted that

---

[5] According to Vachon, a recent town assessment valued the Oceanic Inn property at $642,300, and the actual value is approximately $900,000. Vachon also claimed that the property contained personal property and furnishings worth approximately $200,000, and argued both that (1) Sloan's Cove could not legally sell this personalty at auction along with the real estate, and (2) selling the personalty at auction along with the real estate would have resulted in a more lucrative sale.

8

the interest provision in the allonge replaced both interest provisions in the original note.

[¶14]  With regard to attorney fees, Sloan's Cove claimed that provisions in the note and guaranty made Oceanic responsible for paying about $65,000 in legal fees that Sloan's Cove incurred in carrying out the foreclosure and defending against the ensuing litigation.  Sloan's Cove supported these assertions with an affidavit of its attorney, to which was attached a bill of costs.  Oceanic argued that Sloan's Cove's bill of costs was not adequately detailed and that the fees and costs claimed were unreasonable.

[¶15]  The court agreed with Oceanic that Sloan's Cove was entitled to only the "prime plus three percent" interest rate expressed in the allonge, and awarded Sloan's Cove $59,000 in attorney fees plus the costs that Sloan's Cove had identified.  The court then entered a final comprehensive judgment on all claims, which incorporated its previous judgments.  This appeal followed.

## II.  DISCUSSION

A.    Dismissals

[¶16]  Oceanic argues that the court erred by dismissing its claims for breach of fiduciary duty and negligent infliction of emotional distress.  Because the court dismissed the claims pursuant to M.R. Civ. P. 12(b)(6), we review the legal sufficiency of the complaint de novo, viewing the complaint "in the light most

favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Ramsey*, 2012 ME 113, ¶ 6, 54 A.3d 710 (quotation marks omitted).

### 1. Claim for Breach of Fiduciary Duty

[¶17] Oceanic claimed that the various aspects of the relationship between Vachon and Beale created a fiduciary relationship between Sloan's Cove and either Oceanic Inn, Inc., or Vachon, or both, and that Sloan's Cove breached that duty by "failing to keep the Plaintiff fully informed as to its intent to sell the Oceanic Inn, failing to act diligently to protect Plaintiff's interests, [and] concealing or failing to disclose material facts."

[¶18] To survive Sloan's Cove's motion to dismiss, Oceanic must have alleged sufficient facts to show that a fiduciary relationship existed between Sloan's Cove and either Oceanic Inn, Inc., or Vachon. "The elements of a fiduciary relationship are (1) the actual placing of trust and confidence in fact by one party in another, and (2) a great disparity of position and influence between the parties at issue." *Id.* ¶ 7 (quotation marks omitted). "To establish the element of disparity of position and influence, [the plaintiff] must demonstrate diminished emotional or physical capacity or . . . the letting down of all guards and bars." *Id.* ¶ 9 (quotation marks omitted). "Although a fiduciary duty may be based on moral, social, domestic, or merely personal duties, it does not arise merely because

of the existence of kinship, friendship, business relationships, or organizational relationships." *Bryan R. v. Watchtower Bible & Tract Soc'y*, 1999 ME 144, ¶ 20, 738 A.2d 839 (alteration omitted) (citation omitted) (quotation marks omitted).

[¶19]  First, Oceanic argues that a fiduciary relationship automatically arises between a mortgagor and a mortgagee who forecloses pursuant to a power of sale provision.  *See Pearson v. United States*, 831 F. Supp. 2d 514, 519-20 (D. Mass. 2011) (deciding that, although a lender generally does not owe a fiduciary duty to a borrower, "one such instance in which a fiduciary duty arises between a lender and a borrower is in the context of a foreclosure sale . . . to refrain from committing fraud, bad faith or failing to use reasonable diligence in the sales process"); *Murphy v. Fin. Dev. Corp.*, 126 N.H. 536, 540-41, 495 A.2d 1245 (N.H. 1985) (citing "the often-repeated rule that a mortgagee executing a power of sale is bound both by the statutory procedural requirements *and* by a duty to protect the interests of the mortgagor through the exercise of good faith and due diligence," and holding that "the mortgagee's duty of good faith and due diligence is essentially that of a fiduciary").  We decline to adopt such a per se rule.  In the absence of specific facts sufficient to support the elements of a

fiduciary relationship, a mortgagee foreclosing by power of sale does not owe a fiduciary duty to the mortgagor.[6]

[¶20]  Alternatively, Oceanic asserted that a fiduciary relationship existed because Vachon's sister, Pauline Beale, is the personal representative of their mother's estate; Vachon is a beneficiary of that estate; and Beale, as sole owner of Sloan's Cove, used estate funds improperly to block the bankruptcy reorganization plan proposed by Oceanic Inn, Inc.  Oceanic claimed that the relationship between Vachon and Beale caused Sloan's Cove to owe some sort of a duty to Vachon to inform him that he was the actual owner of the Oceanic Inn property.[7]

[¶21]  These allegations, however, which we assume are true, are also insufficient to support the elements of a fiduciary relationship.  Oceanic's argument is undermined by two facts: first, Pauline Beale is not even a party in Oceanic's action, and second, Oceanic has not alleged and could not argue that Oceanic Inn, Inc., or Vachon placed trust and confidence either in Beale or in the actual defendant in this case—Sloan's Cove.  In fact, the allegations in the

---

[6]   In the judicial foreclosure context, we have held unequivocally that "a relationship of a mortgagee-mortgagor alone . . . is not sufficient to create . . . a fiduciary duty." *Camden Nat'l Bank v. Crest Constr., Inc.*, 2008 ME 113, ¶ 15, 952 A.2d 213.

[7]  Oceanic argues that if Sloan's Cove had informed Vachon that he was the true owner of the Oceanic Inn property, Vachon would have filed a personal Chapter 13 bankruptcy petition to forestall foreclosure on the property, instead of filing a Chapter 11 bankruptcy petition on behalf of Oceanic Inn, Inc., which did not forestall foreclosure.  The fact that Vachon was the true owner should have been known to him and/or his counsel, and certainly was a matter of public record.  *See Thurlough v. Dresser*, 98 Me. 161, 163-64, 56 A. 654 (1903) ("The mere record of a valid mortgage gives constructive notice to all.  All are presumed to know its contents, for any one interested can obtain knowledge by examining the record.").

complaint clearly demonstrate just the opposite. The relationship between the parties is characterized by significant distrust and conflict. Given this record, the court correctly determined that Oceanic failed to allege sufficient facts to show that a fiduciary relationship existed between Sloan's Cove and either Oceanic Inn, Inc., or Vachon.

### 2. Claim for Negligent Infliction of Emotional Distress

[¶22]  Oceanic's argument that the court erred by dismissing its claim for negligent infliction of emotional distress fails for similar reasons. Oceanic claimed that "Defendant breached her [*sic*] duties of care owed to the Plaintiff and Defendant foresaw or reasonably should have foreseen that Plaintiff would suffer severe emotional distress as a result of the tortious conduct committed by the Defendant."

[¶23]  To survive Sloan's Cove's motion to dismiss on this claim, Oceanic must have alleged sufficient facts that, taken as true, could establish that Sloan's Cove owed a duty to Oceanic Inn, Inc., or Vachon; that Sloan's Cove breached its duty; that Oceanic Inn, Inc., or Vachon suffered severe emotional distress; and that Sloan's Cove's conduct caused the harm. *See Steadman v. Pagels*, 2015 ME 122, ¶ 26, 125 A.3d 713; *Curtis v. Porter*, 2001 ME 158, ¶¶ 18, 20, 784 A.2d 18. "[W]e have recognized a duty to act reasonably to avoid emotional harm to others in very limited circumstances: first, in claims commonly referred to as bystander

liability actions; and second, in circumstances in which a special relationship exists between the actor and the person emotionally harmed." *Curtis*, 2001 ME 158, ¶ 19, 784 A.2d 18 (footnote omitted).

[¶24] Oceanic argues that the complaint sufficiently alleges a "special relationship," in the form of "the various fiduciary roles held by the 100% shareholder of Sloan's Cove as well as directly by Sloan's Cove due to its taking on the fiduciary duty of selling Vachon's property." The relevant allegations in its complaint revolve around Beale's roles as the personal representative of their mother's estate and sole owner of Sloan's Cove, and Sloan's Cove's status as a mortgagee foreclosing pursuant to the mortgage's power of sale provision. As we have discussed, Oceanic Inn's argument that these circumstances could give rise to a fiduciary or "special" relationship is unpersuasive. The court therefore did not err in dismissing Oceanic's negligent infliction of emotional distress claim.

B.    Summary Judgments

[¶25] We review a trial court's grant of a summary judgment de novo, considering the evidence in the light most favorable to the nonprevailing party. *Angell v. Hallee*, 2014 ME 72, ¶ 16, 92 A.3d 1154. "Summary judgment is properly granted if the record reflects that there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law." *Doe v. Reg'l Sch. Unit 26*, 2014 ME 11, ¶ 13, 86 A.3d 600 (quotation marks omitted); *see* M.R.

14

Civ. P. 56(c). "A fact is material if it has the potential to affect the outcome of the suit, and a genuine issue of material fact exists when a fact-finder must choose between competing versions of the truth, even if one party's version appears more credible or persuasive." *Angell*, 2014 ME 72, ¶ 17, 92 A.3d 1154 (quotation marks omitted).

[¶26] A defendant who is the moving party has "the initial burden to establish that there is no genuine dispute of fact and that the undisputed facts would entitle [the defendant] to judgment as a matter of law" at trial. *Jennings v. MacLean*, 2015 ME 42, ¶ 5, 114 A.3d 667 (quotation marks omitted). The nonmoving plaintiff must then demonstrate that material facts are disputed and must make out a prima facie case for its claim. *Id.*; *see also Budge v. Town of Millinocket*, 2012 ME 122, ¶ 12, 55 A.3d 484. When the material facts are not in dispute, this Court reviews de novo the trial court's application of the law. *Remmes*, 2015 ME 63, ¶ 19, 116 A.3d 466.

1.    Oceanic's Claim for Breach of Contract

[¶27] Oceanic argues that Sloan's Cove's power of sale foreclosure auction should be invalidated because the sale did not comply with Maine law, and that Sloan's Cove therefore violated the parties' contract. Although the parties agree that the law requires compliance with the statutory power of sale requirements, and

there is no real dispute about Sloan's Cove's compliance with the statute,[8] Oceanic argues that, beyond statutory compliance, a mortgagee who forecloses pursuant to a power of sale provision owes fiduciary or "quasi-fiduciary" duties to a mortgagor or, alternatively, that such a sale must meet a standard of "commercial reasonableness."

[¶28]  Having already explained why we reject Oceanic's assertion that the mortgage held by Sloan's Cove created some sort of fiduciary relationship between the parties, we turn to Oceanic Inn's argument that a standard of commercial reasonableness governs power of sale foreclosures and that Sloan's Cove's conduct in connection with the foreclosure auction made the sale commercially unreasonable.

[¶29]  We note, at the outset, that no part of the parties' contract states that the mortgagee, upon initiating a foreclosure by power of sale, would be required to conduct the sale in accordance with any standard beyond that which is required by statute.  Nor do the power of sale statutes themselves, to which the contract *does* refer, contain any requirement that a power of sale foreclosure sale be "commercially reasonable."  *See* 14 M.R.S. § 6203-A; 33 M.R.S. § 501-A.  In this breach of contract dispute, we address Oceanic's argument regarding "commercial

---

[8]  We are not persuaded by Oceanic's assertion, on appeal, that the sale notice was not sent by registered mail.  Oceanic failed to deny—and therefore admitted—this fact in its opposition to Sloan's Cove's motion for summary judgment.  *See* M.R. Civ. P. 56(h)(4).

16

reasonableness" in accordance with the note's provision that the note would be "governed by, and interpreted and construed in accordance with, the laws of the State of Maine."

[¶30] "Commercially reasonable" means "conducted in good faith and in accordance with commonly accepted commercial practice." Black's Law Dictionary 305 (9th ed. 2009). Although the phrase derives from Article 9 of the Uniform Commercial Code, which governs security interests in personal property, *see* 11 M.R.S. §§ 9-1109, 9-1610(2) (2015), some courts have nonetheless applied the standard to power of sale mortgage foreclosures, *e.g.*, *Wansley v. First Nat'l Bank of Vicksburg*, 566 So.2d 1218, 1224-25 (Miss. 1990).[9] In *Bar Harbor Bank & Trust v. The Woods at Moody, LLC*, addressing a mortgagee's action for a deficiency judgment, we analyzed a mortgagor's challenge to the power of sale foreclosure auction according to a standard of commercial reasonableness. 2009 ME 62, ¶¶ 17-20, 974 A.2d 934. Although the mortgagor in *Moody* argued that the sale price was inadequate, we affirmed the trial court's grant of a summary judgment to the foreclosing mortgagee, holding that "price inadequacy is generally

___

[9] Courts in other jurisdictions have decided differently. *See, e.g.*, *Pentad Joint Venture v. First Nat'l Bank of La Grange*, 797 S.W.2d 92, 97 (Tex. App. 1990) (holding that, in contrast to foreclosure of a mortgage secured by personal property, "foreclosure of *real property* under a deed of trust need not be at a 'commercially reasonable' sale, and the failure to conduct a commercially reasonable foreclosure sale of real property is not actionable"); *see also Pemstein v. Stimpson*, 630 N.E.2d 608, 613-14 (Mass. App. Ct. 1994) (espousing, instead of commercial reasonableness, a "reasonable diligence" standard, which "inquires whether the sale has been advertised at least as required by statute, whether the proceedings have been open, and whether notice of foreclosure sale has been given to obviously interested parties").

an insufficient basis on which to challenge the reasonableness of a sale unless other factors exist, such as fraud, unfairness or other irregularity." *Id.* ¶ 20 (citing 1 Grant S. Nelson & Dale A. Whitman, *Real Estate Finance Law* § 7.21 at 853-54 (5th ed. 2007)).

[¶31] In support of its claim of commercial unreasonableness, Oceanic relies on Sloan's Cove's decisions not to hire a licensed auctioneer to conduct the auction and not to advertise the sale beyond what was required by statute, and contends that Cummings chilled bidding by confusing potential bidders when he informed them that Oceanic Inn, Inc., had filed a bankruptcy petition on the morning of the auction.[10] We are not persuaded.

[¶32] In addition to complying with each of the statutory requirements, the record shows that Sloan's Cove also complied with the terms of the parties' agreement. This was a breach of contract action, and neither the note, nor the mortgage, nor the allonge contains language requiring the mortgagee to employ a particular form or extent of advertising leading up to the sale upon default. Moreover, despite the claimed lack of advertisements and the complication of a

---

[10] In arguing that the foreclosure auction was commercially unreasonable, Oceanic again relies on Sloan's Cove's decision not to inform Vachon that he was the true owner of the Oceanic Inn property. As we have already discussed, neither Sloan's Cove nor its attorney owed any duty to provide information to an opposing party. Cummings owed a duty to Sloan's Cove to represent its interests, which included pursuing the foreclosure. That he did not assist Vachon in blocking the foreclosure did not make the sale commercially unreasonable.

18

last minute bankruptcy filing, this foreclosure sale achieved the unusual result of generating a surplus. When Vachon defaulted on the mortgage, he owed $284,500. Several potential buyers attended the auction, and two bid actively. The property was sold for $455,000. Given these circumstances, and assuming, solely for the purpose of this argument, that Maine law requires that a power of sale foreclosure auction meet the standard of commercial reasonableness, we cannot agree with Oceanic's argument that a fact-finder could rationally conclude that the sale was commercially unreasonable.

[¶33] Finally, Sloan's Cove's decision not to hire a licensed auctioneer does not render the sale unreasonable or require invalidation of the sale. Oceanic points to the auctioneering licensing statute, 32 M.R.S. § 285 (2015), which requires a person "who engages in the business of auctioneering, professes or advertises to be an auctioneer or advertises the sale of real, personal or mixed property by auction" to hold a valid auctioneer's license. The power of sale statute, however, specifically authorizes "the mortgagee or . . . his or their agent or attorney [to] sell the mortgaged premises . . . by a public sale." 33 M.R.S. § 501-A.

[¶34] Even accepting Oceanic's argument that Cummings violated the plain language of the auctioneering licensing statute by conducting the auction, there is no support for the remedy Oceanic seeks—the licensing statutes provide for civil and criminal penalties for a violation of the statute, but do not provide for a private

cause of action to invalidate a sale conducted by an unlicensed auctioneer. 10 M.R.S. § 8003-C(3)-(5) (2015). As the trial court noted, courts in other jurisdictions have reached the same conclusion. *See Assocs. Discount Corp. v. Lunsford*, 128 S.E.2d 924, 924-25 (Va. 1963) (holding that an auction sale by a creditor's employee, who was unlicensed as an auctioneer, did not bar a deficiency judgment, and noting that "[w]here a person sells at action without a license the question is one between the State and the auctioneer"); *Gorman v. Berg*, 141 A. 179, 179-80 (R.I. 1928) (per curiam) (holding that an auction sale by an unlicensed auctioneer did not invalidate the sale); *Williston v. Morse*, 51 Mass. 17, 23 (1845) (holding that an auction sale by an unlicensed auctioneer "will not affect the conveyance to an innocent purchaser").

[¶35] Oceanic has not demonstrated that a genuine issue of material fact exists as to Sloan's Cove's compliance with the power of sale statute or as to the reasonableness of the sale. It therefore cannot make out a prima facie case for its breach of contract claim, and the trial court concluded correctly that Sloan's Cove is entitled to judgment as a matter of law on that claim.

2. Sloan's Cove's Counterclaim

[¶36] Sloan's Cove was the plaintiff and moving party on its counterclaim, in which it sought a declaratory judgment validating the foreclosure sale. It therefore "ha[d] the burden to demonstrate that each element of its claim [wa]s

established without dispute as to material fact within the summary judgment record." *North Star Capital Acquisition, LLC v. Victor*, 2009 ME 129, ¶ 8, 984 A.2d 1278. Based on the foregoing, we conclude that Sloan's Cove has met this burden, and that the court correctly granted a summary judgment in Sloan's Cove's favor on its counterclaim for a declaratory judgment.

3. Oceanic's Action for Accounting

[¶37] Oceanic contends that the court erred by awarding Sloan's Cove a substantial portion of the attorney fees it requested in response to Oceanic's action for accounting, arguing that Sloan's Cove incurred greater attorney fees than necessary and that the bill of costs was not sufficiently detailed. We are not persuaded by this argument.

[¶38] An accounting for profits, "[o]ften shortened to *accounting*," is

> [a]n action for equitable relief against a person in a fiduciary relationship to recover profits taken in breach of the relationship. . . . "[I]t is a restitutionary remedy based upon avoiding unjust enrichment . . . [that] reaches monies owed by a fiduciary or other wrongdoer, including profits produced by property which in equity and good conscience belonged to the plaintiff."

Black's Law Dictionary 22 (9th ed. 2009) (quoting Dan B. Dobbs, *Law of Remedies* § 4.3(5), at 408 (2d ed. 1993)).

[¶39] Because we conclude as a matter of law that Oceanic cannot prove the existence of a fiduciary relationship between Sloan's Cove and either Oceanic Inn,

Inc., or Vachon, neither Vachon nor Oceanic Inn was entitled to any sort of an accounting. Despite Oceanic's labeling of its claim as an "action for accounting," however, the court and the parties treated the action as a request that the court decide what amounts, if any, Oceanic Inn owes to Sloan's Cove after the foreclosure sale, based on provisions in the note specifying interest and "reasonable attorney fees and expenses" to be paid upon default.[11] Oceanic's claim is therefore more accurately characterized as a preemptive strike challenging the amount of damages to which Sloan's Cove would be entitled based on Oceanic's breach of contract.

[¶40] Oceanic does not dispute that the legal work claimed was actually completed, and failed to demonstrate any defect in the manner in which Sloan's Cove's counsel recorded the time he spent to provide legal services. *See Hebert v. Hebert*, 475 A.2d 422, 426-27 (Me. 1984). The trial court, which was intimately familiar with this complex action, did not err in concluding that Sloan's Cove was entitled to $59,000 in attorney fees. *See Poussard v. Commercial Credit Plan, Inc. of Lewiston*, 479 A.2d 881, 884-86 (Me. 1984).

---

[11] The language of section 6203-A(5) in effect at the time said:

> If the real estate is sold for an amount in excess of the outstanding balance of the mortgage together with all interest and costs, said excess must be used to satisfy any other encumbrances on said property and after all said encumbrances are satisfied together with all interest and costs, any excess then remaining must be paid to the mortgagor.

14 M.R.S. § 6203-A(5) (2012).

[¶41]   Finally, as Oceanic correctly points out, the court concluded, in its order on Sloan's Cove's motion for a summary judgment on the action for accounting, that the parties' contract contemplated only the allonge's "prime plus three percent" interest rate rather than the original note's "default" interest rate. In its efforts to address all of the blind alleys presented by Oceanic's litigation tactics, the court apparently erred by including in its comprehensive judgment an interest figure calculated by applying both interest rates.  We therefore amend the judgment to correct this clerical error, and affirm the judgment as amended. *See State v. Thornton*, 2015 ME 15, ¶ 14, 111 A.3d 31.  Part 3(a) of the court's comprehensive judgment is amended to read as follows: "(a) As of the date of the foreclosure sale, September 13, 2013, Plaintiff Armand Vachon owed Defendant Sloan's Cove, LLC $284,500, plus accrued regular interest of $16,743.21, plus attorney fees of $22,500, plus costs of $1,780.26, all of which amounts remain unpaid, due and owing."  We do not otherwise alter the judgment.

The entry is:

> The judgment is amended to reflect that, as of the date of the foreclosure sale, Vachon owed Sloan's Cove accrued regular interest of $16,743.21.
>
> The judgment is affirmed as amended.

**On the briefs and at oral argument:**

John S. Campbell, Esq., Campbell & Associates, P.A., Portland, for appellants Oceanic Inn, Inc. and Armand Vachon

Daniel L. Cummings, Esq., Norman, Hanson & DeTroy, LLC, Portland, for appellee Sloan's Cove, LLC

Business and Consumer Docket docket number RE-2014-1
FOR CLERK REFERENCE ONLY