STATE OF MAINE                          BUSINESS AND CONSUMER COURT
CUMBERLAND, ss.                         CIVIL ACTION
                                        DOCKET NO.: BCD-CV-2017-04


SETH KETCHUM,                    )
                                )
          Plaintiff             )
                                )
v.                              )
                                )       ORDER FOLLOWING BENCH TRIAL
                                )
RICHARD KETCHUM, III, et. al.,  )
                                )
          Defendants            )
                                )


        This case is about the sometimes rocky business relationship between two brothers.  This

case was tried to the Bench on April 8-9, 2019.  The parties filed post-trial briefs on August 1,

2019. The Court has considered the briefs and all the evidence admitted at trial, assessed the

credibility of witnesses, and resolved conflicting testimony. For the reasons discussed below, the

Court concludes that neither brother has prevailed on his respective claims.

                              **FINDINGS OF FACT**

        Based on the stipulations of the parties and the evidence adduced at trial, and drawing all

reasonable inferences therefrom, the Court makes the following findings of fact.   On April 15,

2010, Plaintiff Seth Ketchum ("Seth") and Defendant Richard Ketchum, III ("Rich") entered into

an Operating Agreement for Gorham Industrial Warehouse, LLC ("GIW"). The purpose of GIW

was to own a warehouse that initially served as headquarters for Ketchum Distributing, Inc.

("KDI"), a beverage distribution company also owned and operated by Seth and Rich.

                                        1

In 2011, KDI lost a major distributorship and fell on hard times. In the aftermath, Seth wanted out of the business. Seth and Rich negotiated an agreement (the "KDI Agreement") for Rich to buy out Seth's interest in KDI. The brothers executed the KDI Agreement on July 19, 2012. The KDI Agreement contains a non-disparagement clause.

Rich moved forward with KDI and attempted to rebuild the business. KDI continued to lease the warehouse from GIW. Within approximately a year, however, KDI lost another important distributorship, and ceased business operations. KDI's failure left GIW without a tenant for its warehouse.

As a result, GIW entered a period of financial difficulty, which extended from 2012 to around 2016. Over the past year or two, GIW's financial picture has slowly begun to stabilize, as GIW has been able to obtain tenants for the warehouse. GIW is currently servicing its mortgages, paying its bills, and generating a small profit.

Since at least 2012, the brothers have fought over management of GIW. GIW is a member managed LLC. Through default or because of Seth's acquiescence, Seth's health issues, occasional agreement between the brothers, and the history of management at KDI, Rich manages GIW. However, Seth and Rich hold equal fifty-percent membership interests in GIW, and thus neither brother has majority control. Section 5.2 of GIW's Operating Agreement provides that "no Member shall have the power to act for or on behalf of, or to bind, the Company without first obtaining the written consent" of the other member. Seth accuses Rich of taking management actions without Seth's consent, in violation of Section 5.2. Seth also accuses Rich of blocking Seth's access to company and banking information to which he is entitled under the Operating Agreement, and of taking other actions in violation of various other sections of the Operating Agreement.

The Operating Agreement contains a dispute resolution clause. The clause is entitled "Arbitration," and is contained in Section 12.13 of the Operating Agreement, which provides as follows:

> The parties agree that any dispute arising out of or in connection with the terms of this Operating Agreement shall be submitted to arbitration at Waldoboro, Maine before a board of three arbitrators in accordance with the rules then prevailing of the American Arbitration Association. The decision of the majority of such arbitrators shall be binding upon the parties and the parties consent to the entry of judgment in accordance with the arbitrators' decision in a court of competent jurisdiction.

Section 12.13 by its text plainly applies to Seth's complaints about the manner in which Rich is managing GIW and violating the Operating Agreement. However, Seth has never invoked, nor attempted to invoke, the Operating Agreement's arbitration clause. Seth has no explanation for why he has failed to do so. Rich has never refused to participate in arbitration requested under Section 12.13, nor stated that he would refuse.

Under Rich's management, GIW has not filed tax returns for tax years 2011 through 2018. Seth has repeatedly contacted Rich to inquire as to the status of those tax return filings, and to urge Rich to file the returns. On November 3, 2016, while this litigation was pending, the brothers entered into an agreement (the "Partial Agreement") to address the preparation and filing of GIW's tax returns. The Partial Agreement placed several obligations on Rich, but provided that tax returns "shall not be filed until such time as all parties agree as to their content." The parties could not come to agreement on the content of the tax returns. On September 17, 2018, Seth moved for the appointment of a CPA referee. The Court granted the motion, and issued an Order establishing a mandatory process to prepare and file the tax returns, and to resolve any disputes about the returns. The accountant retained by Rich prepared draft returns. Seth objected to the returns, but

3

did not use or attempt to use the mandatory dispute resolution process contained in the Court's Order.

At no point during their co-ownership of GIW has Seth placed trust and confidence in Rich. Indeed, from the beginning, Seth has been suspicious of Rich based on Seth's experience with KDI. Although Seth has experienced serious health issues during his co-ownership of GIW, Seth has never dropped his guard with regard to Rich.

Sometime in 2012 or 2013, Rich asked Seth to use their father, Ross Ketchum, as a third-party go-between, to see if Ross could help resolve their conflict. In that process, Seth painted a picture of Rich that was not a positive one. In an effort to explain the conflict from his point of view, Seth told Ross that he believed Rich was trying to push him aside, cost him money, and take advantage of him. Ross was ultimately unable to resolve the conflict between his sons.

Seth has at times mentioned Rich in conversation with non-family third parties, such as Jeff Lachance and Steve Upton. Seth did not say anything derogatory about Rich during those conversations, nor did he say anything that impugned Rich's reputation or character. Seth did not say anything that held Rich in a bad or false light, nor did he state anything as a matter of fact that was untruthful.

### PROCEDURAL HISTORY

Seth initiated this litigation with a one-count complaint seeking judicial dissolution of GIW. Rich denied the allegations, and in his Fifteenth Affirmative Defense answered in relevant part that "Plaintiff's claims must be barred as he failed to follow his obligations to resolve any differences according to the operating document and relevant Maine law . . ." Seth later amended his complaint for judicial dissolution, adding KDI as a defendant, and adding counts for unjust enrichment (Count II), breach of fiduciary duty (Count III), fraud (Count IV), conversion (Count

4

V), and breach of contract (Count VI). Rich answered, and reasserted his affirmative defense based on the Operating Agreement's dispute resolution clause. Rich added counterclaims for breach of contract (based on the non-disparagement clause contained in the KDI Agreement) and defamation.

At the Pretrial Conference, Seth stipulated to the dismissal of KDI as a defendant from any of his claims. On the morning of the trial, before the presentation of evidence, Seth further stipulated to the dismissal of his claims for fraud (Count II), unjust enrichment (Count IV), and conversion (Count V). Seth proceeded to trial on his claims for judicial dissolution (Count I), breach of fiduciary duty (Count II), and breach of contract (Count VI). Rich proceeded to trial on his counterclaims for breach of contract and defamation.

On the morning of the second day of trial, the Court granted Rich's motion for judgment as a matter of law on Seth's claim for judicial dissolution (Count 1). *See* M.R. Civ. P. 50(d). The Court declined to dissolve the company, and delivered its decision on the record from the Bench. What is left for the Court's determination are Seth's claims for breach of fiduciary duty and breach of contract, and Rich's claims for breach of contract and defamation. As discussed below, the Court determines that Seth and Rich have both failed to satisfy their respective burdens of proof, and thus all the claims and counterclaims must fail.

[continued on next page]

## ANALYSIS

The Court begins its discussion with Seth's claims for breach of fiduciary duty and breach of contract. Both the breach of fiduciary duty claim[1] and the breach of contract claim[2] arise out of or in connection with the terms of the Operating Agreement. Section 12.13 of the Operating Agreement provides an arbitration process for addressing such claims, and the process is mandatory and exclusive. Seth did not use the process, and instead brought his claims directly in court in clear violation of Section 12.13.

From the outset, Rich asserted his affirmative defense that Section 12.13 barred Seth from having his claims adjudicated in court. Rich never waived the defense, and relies heavily on the

---

[1] It is unclear, but Seth appears to be pursuing both a common law breach of fiduciary duty claim, and a statutory breach of fiduciary duty claim under 31 M.R.S. § 1559. The two claims are conceptually distinct. The common law claim arguably does not arise under the Operating Agreement, and thus arguably is not subject to Section 12.13's arbitration clause. However, the common law breach of fiduciary duty claim requires, among other elements, proof that the plaintiff placed trust and confidence in the defendant. *See Oceanic Inn, Inc. v. Sloan's Cove, LLC,* 2016 ME 34, ¶ 18, 133 A.3d 1021. Here, Seth did not place trust and confidence in Rich, and so a special or confidential relationship never arose between the two brothers with respect to GIW. *See id.* Accordingly, the Court grants judgment with prejudice to Rich on Seth's claim for common law breach of fiduciary duty. In contrast, the statutory breach of fiduciary duty claim arises out of or in connection with the Operating Agreement and is subject to Section 12.13.

[2] In his post-trial brief, Seth appears to argue that his breach of contract claim is based in whole or in part on breach of the Partial Agreement. The Partial Agreement is different from the Operating Agreement. A breach claim based on the Partial Agreement arguably does not arise under the Operating Agreement, and thus arguably is not subject to Section 12.13's arbitration clause. However, to the extent Seth's breach of contract claim is based in whole or in part on the Partial Agreement, it must fail. According to Plaintiff's First Amended Complaint, the breach of contract claim (Count VI) is based on the KDI Agreement and the GIW Operating Agreement. Seth dismissed KDI from his claims, leaving only the GIW Operating Agreement as the basis for his breach of contract claim. The First Amended Complaint does not mention the Partial Agreement, and nothing in the manner that Rich defended the claim suggests he consented to conforming the complaint to the evidence. *See* M.R. Civ. P. 15(b). Second, regardless of Rich's performance under the Partial Agreement, Seth did not agree with the contents of the proposed tax returns, and so ultimately there was no breach and no damages. Finally, to address the failure of the parties to file tax returns under the Partial Agreement, at Seth's request the Court granted his motion for appointment of a CPA referee. As part of its Order, the Court provided the parties with a mandatory dispute resolution mechanism to ensure the tax returns were completed and filed—which Seth then failed to utilize. For all these reasons, to the extent Seth's breach of contract claim is based in whole or in part on the Partial Agreement, the Court grants judgment with prejudice to Rich. In contrast, to the extent the breach of contract claim is based on the Operating Agreement, the claim is subject to Section 12.13.

6

defense in his Proposed Findings of Fact and Conclusions of Law.[3]   Seth's failure to use the mandatory and exclusive arbitration clause was an important factor contributing to the Court's ruling on the judicial dissolution claim, and also figures prominently in the Court's analysis of Seth's breach of fiduciary duty and breach of contract claims.

"Maine has a broad presumption favoring substantive arbitrability . . . ." *Roosa v. Tillotson*, 1997 ME 121, ¶ 3, 695 A.2d 1196; *see also* 14 M.R.S. §§ 5927-5949 (2018).  In this case, there is no question that the claims for breach of fiduciary duty and breach of contract fall squarely within the scope of Section 12.13's mandatory and exclusive arbitration provision.  As a result, Seth is barred from having his claims decided in a judicial forum over the objection of Rich, who rightly argues the claims can only be resolved through arbitration. Accordingly, the Court grants judgment to Rich on Seth's claims for breach of fiduciary duty and breach of contract.   However, the judgment is granted without prejudice to Seth bringing his claims in arbitration pursuant to Section 12.13 of the Operating Agreement.[4]

Turning to Rich's counterclaims, the Court need not spend much time.  There is little to no credible evidence to support Rich's claim for breach of the KDI Agreement based on disparagement, or his claim for defamation.   Seth's comments to non-family members were innocuous and not disparaging.  There is no credible evidence that the comments led to the loss of a KDI distributorship or in any other way harmed Rich.   Seth's comments to his father, Ross, occurred in the context of dispute resolution suggested by Rich, and were thus privileged. *Cf.* M.R.

---

[3] Typically, the defense of a mandatory arbitration clause is asserted through a pre-trial motion to stay or other pre-trial motion. *See* 14 M.R.S. § 5928.  In this case, the presence of KDI as a defendant through most of the case, and the inclusion of a fraud claim (and other claims arguably outside the scope of the arbitration clause) in the Complaint, arguably made the typical pre-trial approach somewhat complicated.

[4] As noted in footnotes 1 & 2, *supra*, the Court has granted Rich judgment with prejudice for any aspects of the breach of fiduciary duty and breach of contract claims that may arguably exist outside the scope of Section 12.13 of the Operating Agreement.

Evid. 408. Even if the comments were not privileged, the comments constituted Seth's opinion regarding the nature of the relationship, and in the context presented could not have been understood to be statements of fact. *See Ballard v. Wagner*, 2005 ME 86, ¶ 10, 877 A.2d 1083 (citing *Lester v. Powers*, 596 A.2d 65, 69 (Me. 1991)). The Court grants judgment to Seth on Rich's counterclaims for breach of contract and defamation.

Pursuant to M.R. Civ. P. 79(a), the Clerk is instructed to incorporate this Order by reference on the docket for this case.

So Ordered.


Dated:    August 8, 2019                    _____/s/_____
                                            Michael A. Duddy
                                            Judge, Business and Consumer Court

**Seth Ketchum**

**v.**

**Richard Ketchum, III, et al.**

## BCD-CV-2017-04

Seth Ketchum

Michael Vaillancourt, Esq.
7 Ocean Street
South Portland, ME 04116

Richard Ketchum, III
Gorham Industrial Warehouse, LLC
Ketchum Distributing, Inc.

Benjamin Donahue, Esq.
6 City Center, Ste 208
Portland, ME 04112