STATE OF MAINE                          BUSINESS & CONSUMER DOCKET
CUMBERLAND, ss.                         DOCKET NO. CV-2018-39


LEGAL-EASE, LLC, P.A.,              )
                                   )
            Plaintiff              )
                                   )
        v.                         )
                                   )
JOAN M. EGDALL, et al.,            )
                                   )
            Defendants             )
                                   )        ORDER ON MOTIONS FOR
_____            )        SUMMARY JUDGMENT
                                   )
JOAN M. EGDALL,                    )
                                   )
            Counterclaim Plaintiff )
                                   )
        v.                         )
                                   )
LEGAL-EASE, LLC, P.A.              )
                                   )
            Counterclaim Defendant )


## INTRODUCTION

Plaintiff Legal-Ease, LLC, P.A. ("Legal-Ease") filed a Complaint alleging that Joan Egdall ("Egdall") formed a solo law firm and diverted clients from Legal-Ease to that firm while employed by Legal-Ease, giving rise to several causes of action against Egdall and her firm (the "Egdall Defendants"). The Egdall Defendants have denied these allegations, and filed a Counterclaim against Legal-Ease alleging, *inter alia*, that Legal-Ease owes Egdall unpaid wages. As the case now comes before the Court, Legal-Ease has filed a Motion for Summary Judgment seeking judgment against the Egdall Defendants on all of the counts contained in the Counterclaim. The Egdall Defendants have filed a Motion for Partial Summary Judgment, seeking judgment in their favor on their Counterclaim count for unpaid wages, and seeking

1

judgment against Legal-Ease on certain of the counts in the Complaint. The Court heard oral argument on the motions on February 4, 2020, in Portland, Maine. Legal-Ease was represented by Sally Morris, Esq. and Betsy Wakefield, Esq., and the Egdall Defendants were represented by Thomas Douglas, Esq. For the reasons discussed below, the Court grants in part and denies in part each Motion.

FACTS

The undisputed material facts are as follows: Legal-Ease is a professional association.[1] Egdall's Counterclaim ¶ 3; Plaintiff's Reply to Defendant's Counterclaim ¶ 3. Since Legal-Ease opened in 2015, attorney Jeffrey Bennett, Esq., has been its sole owner. The Egdall Defendants' Statement of Material Facts ("ESMF") ¶ 4. Egdall is an attorney in good standing, licensed to practice law in Maine. ESMF ¶ 1. In April 2015, Legal-Ease employed Egdall to work as an associate attorney. Legal-Ease Statement of Material Facts ("LSMF") ¶ 1. Egdall remained employed by Legal-Ease until July 2018. LSMF ¶ 30. During her employment at Legal-Ease, Egdall never signed a written employment agreement; never signed a nonsolicitation, noncompetition, or nondisclosure agreement; never became an owner, shareholder, or member of Legal-Ease; and never served as a manager, officer or director of Legal-Ease.[2] She worked solely as an employee for Legal-Ease. Egdall also maintained a separate, solo legal practice. LSMF ¶ 13.

---

[1] Under Maine law, "professional association" is one of the terms used to denote a professional corporation. 13 M.R.S. § 736(1)(A). At a prior hearing in this case, then-counsel for Legal-Ease represented that Legal-Ease is organized as a sole member limited liability company ("LLC"). A professional corporation can have a professional LLC nested within it. *See* 13 M.R.S. § 741(1)(C). Whether Legal-Ease is an LLC or a professional association which contains an LLC is unimportant to the analysis, as it is undisputed that Egdall never served as an owner, shareholder, member, manager, or officer of Legal-Ease.
[2] These are all admissions Legal-Ease made during oral argument.

Tammy White ("White") performed accounting services for Legal-Ease as an accountant. LSMF ¶ 2.[3] Sometime in the spring or summer of 2017, Bennett told White that because the firm's escrow balance was low, he thought Egdall might be billing for work that she had not performed. LSMF ¶ 24. During that same conversation, Bennett told White that Egdall was stealing by falsifying her timesheets. LSMF ¶ 25. White did not believe Bennett, and Bennett's statements did not lower White's opinion of Egdall. LSMF ¶ 26. White did not tell anyone except Egdall what Bennett had said. LSMF ¶ 27. White told Bennett that she would review Egdall's timesheets. LSMF ¶ 28. White reviewed the timesheets, and reported to Bennett that they looked proper. LSMF ¶ 28. After White's audit, Bennett never again mentioned Egdall inflating her time or stealing. LSMF ¶ 30.

While employed at Legal-Ease, Egdall worked on a legal matter for Jean Martel ("Martel"). ESMF ¶ 21. All the attorney time on the invoices billed to Martel was attributable to Egdall. ESMF ¶ 23. At the conclusion of Martel's case in May 2018, Martel had an unpaid balance of $2,070.50. ESMF ¶ 24. Thereafter, Martel made the following payments to Legal-Ease for work performed by Egdall prior to May 2018: $625 on June 5, 2018; $ 400 on August 3, 2018; $450 on November 19, 2018; $300 on February 4, 2019; and $268 on March 15, 2019. After Martel's payment on June 5, 2018, Legal-Ease did not pay Egdall any additional compensation from the Martel payments that came in after Egdall was no longer employed by Legal-Ease in July 2018. ESMF ¶ 26.

While employed at Legal-Ease, Egdall also worked on a legal matter for "R.D." Egdall Defendants Statement of Additional Material Facts (ESAMF) ¶ 2. R.D. subsequently slipped

---

[3] The Egdall Defendants deny certain of the dates contained in LSMF ¶ 2. The Egdall Defendants' denial is more like a qualification. But in any event, they do not deny that White worked as an accountant for Legal-Ease.

3

into arrears for approximately $8,000. ESAMF ¶ 3. Legal-Ease did not pay Egdall for work she performed on the R.D. matter. ESMAF ¶ 4.

## STANDARD OF REVIEW

Summary judgment is granted to a moving party where "there is no genuine issue as to any material fact" and the moving party "is entitled to judgment as a matter of law." M.R. Civ. P. 56(c). "A material fact is one that can affect the outcome of the case, and there is a genuine issue when there is sufficient evidence for a fact-finder to choose between competing versions of the fact." *Lougee Conservancy v. CityMortgage, Inc.*, 2012 ME 103, ¶ 11, 48 A.3d 774 (quotation omitted). To survive a defendant's motion for summary judgment, the plaintiff must establish a prima facie case for every element of the plaintiff's cause of action. *Oceanic Inn, Inc. v. Sloan's Cove, LLC*, 2016 ME 34, ¶ 26, 133 A.3d 1021. "When a plaintiff has the burden of proof on an issue, a court may properly grant summary judgment in favor of the defendant if it is clear that the defendant would be entitled to a judgment as a matter of law if the plaintiff presented nothing more than was before the court" when the motion was decided. *Reliance Nat'l Indem. v. Knowles Indus. Servs., Corp.*, 2005 ME 29, ¶ 9, 868 A.2d 220. Cross motions for summary judgment "neither alter the basic Rule 56 standard, nor warrant the grant of summary judgment per se." *F.R. Carroll, Inc. v. TD Bank, N.A.*, 2010 ME 115, ¶ 8, 8 A.3d 646 (quoting *Wightman v. Springfield Terminal Ry. Co.,* 100 F.3d 228, 230 (1st Cir. 1996)).

## ANALYSIS

The Motions in this case are addressed to the Complaint and the Counterclaim, and the Court addresses each in turn.

**Complaint**

The Complaint in this matter sets forth nine counts:  Count 1, Breach of Fiduciary Duty, Confidential Relationship, and Constructive Fraud; Count 2, Fraud, Misrepresentation, and Deceit; Count 3, Unfair Competition; Count 4, Accounting; Count 5, Unjust Enrichment and Restitution; Count 6, Quantum Meruit; Count 7, Conversion; Count 8, Constructive Trust, and Count 10,[4] Injunctive Relief.  The Egdall Defendants seek summary judgment on most but not all of these counts.  The Court takes each count in order.

Count 1, Breach of Fiduciary Duty, Confidential Relationship, and Constructive Fraud. Litigation frequently involves arguments over whether the relationship between parties gives rise to a fiduciary duty.  *See, e.g.*, *Oceanic Inn, Inc. v. Sloan's Cove, LLC*, 2016 ME 34, ¶¶ 17-21, 133 A.3d 1021; *Stewart v. Machias Sav. Bank*, 2000 ME 207, ¶¶ 10-11, 762 A.2d 44; *Bryan R. v. Watchtower Bible & Tract Soc'y, Inc.,* 1999 ME 144, ¶¶ 11-16, 738 A.2d 839.  At its heart, a fiduciary relationship requires (1) the actual placing of trust and confidence in fact by one party in another, and (2) a great disparity of position and influence between the parties at issue.  *Oceanic Inn,* 2016 ME 34, ¶ 18.  These elements are not usually established by simple business relationships.  *See Watchtower Bible*, 1999 ME 144, ¶ 20.  In this case, Edgall was an employee of Legal-Ease, and nothing more.  She was not an owner, manager, director or officer of Legal-Ease.  A mere employer-employee relationship is not enough to create a fiduciary relationship.  *See Cianchette v. Cianchette*, CUMSC-CV-2016-249 (Me. Super. Ct., Cum. Cty., Jan. 12, 2018 ("[w]hatever wrongdoing may be committed by employees, they are not subject to a fiduciary duty to their employers, at least absent evidence that a relationship of trust and confidence existed between employer and employee and that there was a great disparity of position and influence favoring the employee.")  The

[4] The Complaint does not contain a Count 9.

simple fact that Egdall was hired as an attorney does not change the analysis. Legal-Ease has not established facts sufficient to generate a dispute of fact regarding a fiduciary relationship, and so judgment on the fiduciary duty claim contained in Count 1 of the Complaint is entered in favor of the Egdall Defendants.

A confidential relationship is essentially the same as a fiduciary relationship, and requires essentially the same showing. *Stewart v. Machias Sav. Bank*, 2000 ME 207, ¶ 11 n.1, 762 A.2d 44, citing *Ruebsamen v. Maddocks*, 340 A.2d 31, 36 (Me. 1975). Legal-Ease did not oppose the Egdall Defendants' request for summary judgment on the confidential relationship claim. For this reason and the reasons discussed above, judgment on the confidential relationship claim contained in Count 1 of the Complaint is entered in favor of the Egdall Defendants.

In order to survive summary judgment on its fraud claim, Legal-Ease must establish that (1) Egdall made a false representation; (2) the representation was one of material fact; (3) the representation was made with knowledge of its falsity or in reckless disregard for whether it was true or false; (4) the representation was made for the purpose of inducing another person to act upon it; (5) the other person justifiably relied on the misrepresentation. *Harris Mgmt., Inc. v. Coulombe*, 2016 ME 166, ¶ 26, 151 A.3d 7. The facts must be proven by clear and convincing evidence. *Maine Eye Care Associates, P.A. v. Gorman*, 2006 ME 15, ¶ 16, 890 A.2d 707. Constructive fraud occurs when a party is induced to transfer property in reliance on the fraudulent representation. *See Baizley v. Baizley*, 1999 ME 115, ¶ 7, 734 A.2d 1117. In this case, Legal-Ease alleges that Egdall "supplied false information to a Legal-Ease payroll clerk and obtained compensation to which she was not entitled." *Complaint* ¶ 43.

6

The problem for Legal-Ease is that it has failed to adduce clear and convincing evidence that Egdall ever supplied false information to a Legal-Ease payroll clerk which at the time the information was supplied, Egdall knew the information to be false or provided in reckless disregard for whether it was true or false. Legal-Ease has thus failed to generate a genuine dispute of fact regarding fraud. Further, Legal-Ease did not oppose the Egdall Defendants' request for summary judgment on the constructive fraud claim. Accordingly, summary judgment on the constructive fraud claim contained in Count 1 of the Complaint is entered in favor of the Egdall Defendants.

Count 2, Fraud, Misrepresentation and Deceit. The Egdall Defendants did not specifically move for summary judgment on the fraud claim contained in Count 2 of the Complaint. However, at oral argument, in response to a question from the Court, counsel for Legal-Ease explained that the only difference between constructive fraud and fraud is the remedy available. Indeed, the fraud claims contained in Count 1 and Count 2 are based primarily on the same theory of supplying false information to a payroll clerk. *Compare Complaint* ¶ 43 *with* ¶ 51. Moreover, the Egdall Defendants did explicitly move for summary judgment on all counts in the Complaint premised on the claim that Egdall breached the Maine Rules of Professional Conduct. Count 2 is premised in part on that claim, couched as a breach of a duty of loyalty. *Compare Complaint* ¶¶ 12 - 16 *with* ¶¶ 47 - 50. Hence, it is appropriate for the Court to address Count II.

First, to the extent that Legal-Ease seeks to make out a fraud claim based on breach of a duty of loyalty, the Court has already entered summary judgment in favor of Egdall on Count I. There is nothing left to Legal-Ease's claim that as an employee Egdall owed Legal-Ease a judicially cognizable duty of loyalty. Second, even if Egdall had such a duty, conduct

violating that duty would not make out the elements of fraud. *See Harris Mgmt.*, 2016 ME 166, ¶ 26. Third, the central fraud allegation of Count 2 is that Egdall knowingly provided false information to a payroll clerk in order to get paid. However, as discussed above, Legal-Ease failed to adduce clear and convincing evidence that Egdall ever supplied false information to a Legal-Ease payroll clerk which at the time the information was supplied, Egdall knew to be false or provided in reckless disregard for whether it was true or false. Legal-Ease thus fails to generate a genuine dispute of fact regarding fraud. As a result, summary judgment on Count 2 of the Complaint is entered in favor of the Egdall Defendants.

Count 3, Unfair Competition. It may be that Maine recognizes a common law tort claim for unfair competition, but if so, that claim is limited to cases where one party wrongfully tries to palm off their wares as those of another. *See Hubbard v. Nisbet*, 159 Me. 406, 193 A.2d 850 (1963); *Lapoint Machine Tool Co. v. J.N. Lapointe Co.*, 115 Me. 472, 478 (Me. 1916). In this case, however, Legal-Ease has established no evidence that Egdall tried to palm off her wares as those of Legal-Ease. Moreover, at oral argument, counsel for Legal-Ease clarified that the unfair competition claim in Count 3 is just a reprise of the claims styled somewhat differently in Count 1. Legal-Ease fails to generate a genuine dispute of fact regarding unfair competition. Therefore, summary judgment on Count 3 of the Complaint is entered in favor of the Egdall Defendants.

Count 4, Accounting. According to Legal-Ease, its claim for accounting is tied to its Count I claim for breach of fiduciary duty. Since summary judgment on Count I of the Complaint has already been entered in favor of the Egdall Defendants, summary judgment on Count IV of the Complaint is also entered in favor of the Egdall Defendants.

Count 5, Unjust Enrichment; Count 6, Quantum Meruit; and Count 7, Conversion. In light of the Court's findings of fact and entry of summary judgment in favor of Egdall on Counts 1 through 4, it is questionable whether these counts should make it past the dispositive motion phase. However, Egdall has not sought summary judgment on these counts and so the Court does not reach them.

Count 8, Constructive Trust. Count 8 seeks the remedy of constructive trust. According to the Complaint, the remedy of constructive trust is tied to Count 1. Accordingly, to the extent it is necessary to enter judgment on a claim for relief, summary judgment on Count 8 of the Complaint is entered in favor of the Egdall Defendants.

Count 10,[5] Injunctive Relief. As its title indicates, Count 10 seeks the remedy of injunctive relief. Based upon an inspection of the Compliant, the request for injunctive relief appears to be tied to Count 1. Further, the only surviving counts are the tort and quasi-contract claims contained in Counts 5, 6, and 7. All of those claims, to the extent they have any continued vitality, can be adequately addressed through money damages. Hence, to the extent it is necessary to enter judgment on a claim for relief, summary judgment on Count 10 of the Complaint is entered in favor of the Egdall Defendants.

**Counterclaim**

The Counterclaim in this matter sets forth six counts: Count I, Unpaid Wages Under 26 M.R.S. § 626; Count II, Fraud; Count III, Unjust Enrichment; Count IV, Defamation; Count V, Accounting; and Count VI, Negligence. With regard to Count I, the Egdall Defendants affirmatively seek summary judgment on their wage claim, but only with respect to two

[5] There is no Count 9 in the Complaint.

alleged accounts: Pacheco and Martel.[6]  Legal-Ease, however, seeks summary judgment on Count I with respect with respect to the entire wage claim.  Legal-Ease also seeks summary judgment against the Egdall Defendants on all the remaining counts in the Counterclaim.  The Court takes each count in order.

Counterclaim Count I, Unpaid Wages Under 26 M.R.S. § 626.  The Court begins its analysis by first focusing on the Egdall Defendants' request for summary judgment in Egdall's favor regarding the Pacheco and Martel matters.  The unpaid wages statute, 26 M.R.S. § 626 (2020), provides that "[a]n employee leaving employment must be paid in full no later than the employee's next established payday."  The Egdall Defendants argue that Egdall was not timely paid for her work on these matters, and thus Egdall is entitled to payment pursuant to Section 626.  The problem for the Egdall Defendants, however, is that they have failed to establish a prima facie factual record for each of the elements necessary to support their claim based on the Pacheco matter.

The Egdall Defendants' Statements of Material Facts regarding the Pacheco matter substantially fail to comply with the requirement for separate, short, concise statements of material fact, supported by affidavits properly laying the foundation for admissible evidence.  *See* M.R. Civ. P. 56(e) and 56(h)(1) – ( 3).  Time and again, the Statements regarding the Pacheco matter contain multiple assertions and lengthy quotes from depositions.  In the face

___

[6] The Egdall Defendants also move for judgment on the pleadings on Legal-Ease's affirmative defense based on the "bona fide" dispute language of 26 M.R.S. § 626-A.  It is unclear whether Section 626-A gives rise to an affirmative defense at all.  The Law Court has rejected any argument that 26 M.R.S. § 626 is subject to a good faith or bad faith element.  *Bisbing v. Me. Med. Ctr.*, 2003 ME 49, ¶¶ 4 – 6, 820 A.2d 582.  Legal-Ease denies that it seeks to assert Section 626-A for any purpose rejected by *Bisbing*.  Instead, Legal-Ease argues that based on Section 626-A, its "affirmative defense is that it has asserted a *bona fide* legal dispute to Egdall's claims."  But this is no different than the summary judgment standard itself.  *See* M.R. Civ. P. 56(c).  Hence, Legal-Ease has not articulated any independent, legitimate purpose for asserting Section 626-A as an affirmative defense.  The Egdall Defendants' Motion for Judgment on the Pleadings is granted.

of such submissions, the Court declines to tease through the Statements to divine the core fact intended to be asserted. Moreover, the Statements frequently refer to hearsay and unauthenticated documents lacking any foundation for an exception to the hearsay rule. Legal-Ease comprehensively objected to the offending Statements. In short, the Egdall Defendants' various Statements of Material Facts fail to establish a factual record from which the Court can consider the argument that Egdall is entitled to payment under 26 M.R.S. § 626 for services rendered in the Pacheco case.

For example, ESMF ¶ 12 is seven lines long, and contains multiple assertions. It starts out by describing how Egdall answered her interrogatories. That is not a proper or relevant SMF, unless the motion for summary judgment is aimed at a discovery dispute. ESMF ¶ 12 then quotes at length from Egdall's deposition testimony. The testimony references multiple documents, none of which are authenticated or attached to a filing, and all of which are hearsay (some of which were apparently created by Egdall in support of her own motion). ESMF ¶ 12 fails to provide a record citation to the documents. The Court disregards ESMF ¶ 12.

ESMF ¶ 14 references the existence of three invoices, and ESMF ¶ 15 references the contents of the three invoices. The invoices, however, have not been properly authenticated, and even if they were, the invoices constitute hearsay. The Egdall Defendants have not established any foundation for consideration of the invoices as business records. Without the basic evidentiary foundations, the Court cannot consider the affidavits. *Cach, LLC v. Kulas*, 2011 ME 70, ¶¶ 10 – 12, 21 A.3d 1015; *see also Ocean Cmtys. Fed. Credit Union v. Roberge*, 2016 ME 118, ¶ 11, 144 A.3d 1178. At oral argument, counsel for the Egdall Defendants countered that they did not need to lay any foundation in order to use documents

11

produced in discovery by Legal-Ease. But just because a document is produced by a party-opponent in discovery does not mean the rules of evidence are suspended. "At the summary judgment stage, 'strict adherence to the Rule's requirements is necessary to ensure that the process is both predictable and just.'" *Id.* at ¶ 12, *quoting Deutsche Bank Nat'l Trust Co. v. Raggiani*, 2009 ME 120, ¶ 7, 985 A.2d 1.

ESMF ¶ 15 relies on a record citation to a summary of the contents of the invoices. It is unclear who provided the summary. Perhaps Egdall herself, or her attorney? In addition to the fact that the summary purports to summarize invoices that are not properly in the record, the summary is hearsay and inadmissible. Similar problems plague ESMF ¶¶ 17, 18, 19, and 20, and the Court disregards those Statements as well. ESMF ¶ 18, for example, quotes at length from a referee's report in a Family Matters (FM) case, in which this judge was not involved, and at least one of the parties was different. It is unclear on what basis the Egdall Defendants wish the Court to consider the report. There is no request for judicial notice. The report is not authenticated and not certified. The report appears to be based on evidence not before the Court in this matter. The Court disregards the referee's report.

As a result, the Egdall Defendants have failed on this summary judgment record to establish any material facts, undisputed or otherwise, with regard to the Pacheco matter, and have failed therefore to satisfy their summary judgment burden as to their wage claim based on the Pacheco matter. Summary judgment in favor of Legal-Ease is entered on the wage claim based on the Pacheco matter.

In contrast, the key factual assertions are not subject to objection or dispute regarding the wage claim based on the Martel matter. Legal-Ease received five payments from Martel. Legal-Ease received one payment for $625 in June 2018, while Egdall was still employed.

12

Egdall concedes she does not know whether she received her fifty percent share of this payment. Since Egdall has the burden of proof on her unpaid wage claim, summary judgment is entered in favor of Legal-Ease with regard to the $625 payment in the Martell matter.[7]

Legal-Ease also received four payments on the Martel matter after Egdall was no longer employed. The payments amount to $1,418. Legal-Ease argues it has no obligation to pay Egdall a fifty percent share of this amount, because their agreement was that in order to be paid a share of her billing, Egdall had to still be employed when the client made payment. However, there is a genuine issue of material fact as to whether Egdall had to still be employed to receive payment.[8] Accordingly, the Motions for Summary Judgment are both denied as to the Counterclaim Count I wage claim under 26 M.R.S. § 626, specifically as it rests on the $1,418 in payments in the Martel matter.

The next question is whether there is anything left to the Egdall Defendants' wage claim, outside of the Pacheco and Martel matters. Although the Egdall Defendants limited their Motion to the Pacheco and Martel matters, Legal-Ease aimed its Motion at the entire wage claim. The Egdall Defendants were thus obligated to come forward with facts creating a genuine dispute regarding wage claims based on matters other than Pacheco and Martel. In their briefing and at oral argument, the Egdall Defendants could only identify two other clients as the basis for their wage claim: Maine Wood Treaters, and R.D. The summary judgment record as to both of these clients is sparse.

---

[7] The Egdall Defendants contend Edgall is uncertain because they did not receive certain materials in discovery from Legal-Ease. However, the Egdall Defendants did not seek a discovery conference on the issue, and discovery has now long since ended.

[8] LSMF ¶ 4 is disputed on this point, and unsupported by the record citation to Melissa Coulombe's deposition testimony.

13

Maine Wood Treaters merits basically only one mention in the briefs. According to ¶ 2 of the Egdall Defendants' Statement of Additional Material Facts, Egdall testified at her deposition that Bennett told her she would be paid regardless of whether or not the client had money in escrow. The record fails to establish anything else about the Maine Wood Treaters matter, such as whether and how much Egdall billed on the case, if and when any payments were made on the account, whether and how much Egdall was actually paid, and so forth. The Egdall Defendants are thus unable to generate a dispute of fact regarding Maine Wood Treaters. It follows that the Egdall Defendants have failed to satisfy their burden with regard to a wage claim based on Maine Wood Treaters. Summary judgment in favor of Legal-Ease is entered on the wage claim based on the Maine Wood Treaters matter.

R.D. merits more development in the summary judgment record. The undisputed facts establish that while at Legal-Ease Egdall performed approximately $8,000 of work for R.D.; R.D. did not pay Legal-Ease for that work; and Legal-Ease did not pay Egdall for her work on R.D. Legal-Ease argues that under its payment arrangement with Egdall, it did not need to pay Egdall because R.D. did not pay Legal-Ease. However, there is a genuine dispute of material fact on this issue, because Egdall has established that with regard to some clients, Legal-Ease did pay Egdall for her work even if the clients did not pay Legal-Ease, and Bennett had told Egdall that she would be paid regardless of whether R.D. had money in escrow. Egdall Defendants Statement of Additional Facts ¶ 2. Accordingly, the Motions for Summary Judgment are both denied as to the Counterclaim Count I wage claim under 26 M.R.S. § 626, specifically as it rests on the R.D. matter.

Counterclaim Count II, Fraud.

14

The Edgall Defendants allege that on behalf of Legal-Ease, Bennett made several statements about the likelihood certain clients would pay, and the circumstances under which Egdall would be paid, and those statements proved to be false. The problem for the Egdall Defendants is that they have failed to adduce clear and convincing evidence that Bennett ever supplied false information to Egdall which at the time the information was supplied, Bennett knew the information to be false or provided in reckless disregard for whether it was true or false. The Egdall Defendants have thus failed to establish a genuine dispute of fact regarding fraud. Accordingly, summary judgment on the fraud claim contained in Counterclaim Count II is entered in favor of Legal-Ease.

Counterclaim Count III, Unjust Enrichment. The Egdall Defendants claim that Legal-Ease was unjustly enriched by its failure to pay Egdall amounts owed for her work on certain clients. Unjust enrichment is available as a cause of action based on a legal or moral duty to pay, when there is no contractual relationship. *In re Wage Payment Litig. v. Wal-Mart Stores, Inc.*, 2000 ME 162, ¶ 19, 759 A.2d 217. In the present case, however it is undisputed that Egdall was employed by Legal-Ease. An employment relationship is a form of contractual relationship. *See Id.* at ¶ 20. Consequently, the claim of unjust enrichment is unavailable in this case, and summary judgment on Counterclaim Count III is entered in favor of Legal-Ease.

Counterclaim Count IV, Defamation. The Egdall Defendants allege that Legal-Ease, acting through Bennett, made defamatory statements about Egdall to the Maine Department of Labor ("MDOL"), Tammy White, other members Maine's legal community, and multiple other people. However, the Egdall Defendants concede they have no claim of defamation based on statements made to MDOL. The Egdall Defendants have also failed to come forward with any facts to support their allegations that Bennet made defamatory statements about

15

Egdall to members of Maine's legal community or other people. Hence, summary judgment is entered in favor of Legal-Ease on Counterclaim Count VI's claims of defamation based on statements allegedly made to MDOL, members of Maine's legal community, and other people. The focus of the defamation analysis is thus directed at the statements Bennett made to White while Bennet was acting on behalf of Legal-Ease.

As established by the summary judgment record, it is undisputed that Bennett made statements to White suspecting Egdall of stealing from the firm by falsifying her time sheets and billing for work she had not done. White provided accounting services to Legal-Ease. Based on the statements, White investigated the relevant records, and concluded the accusations had no merit. White reported her conclusions to Bennett, and Bennett made no further accusations to White regarding Egdall.

Legal-Ease contends that Bennett's statements to White were conditionally privileged, and thus not actionable.[9] Whether Legal-Ease is entitled to a conditional privilege is a question of law. Saunders v. VanPelt, 497 A.2d 1121, 1124-25 (Me. 1985). A conditional privilege "arises in settings where society has an interest in promoting free, but not absolutely unfettered, speech." *Lester v. Powers*, 596 A.2d 65, 69 (Me. 1991). For example, the Law Court has recognized a conditional privilege arising from an employment relationship. *See Gautschi v. Maisel*, 565 A.2d 1009, 1011 (Me. 1989). Existence of the conditional privilege is based upon "the totality of the circumstances in view of the interests of the publisher and the recipient." *Rice v. Alley*, 2002 ME 43, ¶ 22, 791 A.2d 932. A

---

[9] Legal-Ease also argues that Bennett's statements of suspicion constituted opinions. Depending on the specific facts, statements of suspicion can sometimes rise to the level of defamation, *see Staples v. Bangor Hydro-Elec. Co.*, 629 A.2d 601, 603 (Me. 1992), and sometimes not, *see Lee v. Bankers Tr. Co.*, 166 F.3d 540, 546-47 (2d Cir. 1999). Given the Court's conclusion that Bennett's statements were conditionally privileged, it is not necessary to determine whether Egdall has created a genuine dispute of material fact regarding whether Bennett's statements of suspicion, absent the conditional privilege, are defamatory.

16

conditional privilege, even if it might otherwise exist, can be lost by abuse, if the publication was made outside ordinary channels, or was otherwise excessive, improper, or was not calculated to further the entities' interests. *Id.*

In this case, Bennet's statements to White were conditionally privileged. On behalf of Legal-Ease, Bennett was entitled to let the Company's accountant know that he suspected an employee was improperly billing. White was clearly the proper channel to express his concerns, as confirmed by White's access to and use of the appropriate financial documents to investigate the concerns and thereby exonerate Egdall. Bennett's statements to White were not excessive or improper, and were calculated to further the interests of Legal-Ease. Thus, Legal-Ease did not abuse its conditional privilege.

The Egdall Defendants nevertheless argue that the conditional privilege was lost, because Bennett's statements to White were made with ill-will toward Egdall. There are two problems with this argument. First, the Egdall Defendants have not established facts supporting their allegation of ill-will.[10] Second, even if Bennett's statements were motivated in part by ill will, that alone would not be sufficient to lose the conditional privilege. If a publication is made for the purpose of protecting a legitimate interest, the fact that the publication is inspired in part by ill-will does not constitute an abuse of the privilege. *Lester*, 596 A.2d at 70-71. Here, regardless of whatever other motivations may have been in play, if any, it is undisputed that Bennett made his statements to White because of the low escrow balance. This was a legitimate basis for Bennett's statements. For these reasons, judgment is entered in favor of Legal-Ease on the Counterclaim Count IV claim for defamation.

[10] In DSAMF ¶ 9, the Edgall Defendants state that White analogized Bennett's statements to a witch-hunt. The statement is actually not accurate, is unsupported by White's deposition testimony, and does not constitute a proper statement of fact.

17

Counterclaim Count V, Accounting. The Egdall Defendants seek accounting as a form of relief linked to their claim for unjust enrichment. As set forth above, however, the unjust enrichment claim does not survive summary judgment. Summary judgment in favor of Legal-Ease is therefore entered on Counterclaim Count V.

Counterclaim Count VI, Negligence. The Egdall Defendants' claim for negligence appears to be based on the novel notion that a law firm owes to its employees a duty to maintain an IOLTA account, the breach of which gives rise to an employee's private right of action against the employer. *See* First Amended Counterclaim at ¶ 68. The Egdall Defendants do not cite to any authority for their theory. Indeed, no duty in tort appears to exist in Maine law requiring a law firm to maintain a client trust account for the benefit of its employees. The Egdall Defendants protest that, notwithstanding their pleading, their negligence claim does not rest solely on failure to maintain a client trust account. Rather, the Egdall Defendants broadly assert that pursuant to 26 M.R.S. § 626, Legal-Ease has a duty to pay wages to Egdall, which, in addition to giving rise to a statutory cause of action, sounds in tort. The Egdall Defendants do not provide any authority for this proposition, either. Further, their effort to divine a common law cause of action for negligence, based on the unpaid wages statute, runs head long into Maine's economic loss doctrine. *See Gannett v. Pettegrow,* 2005 U.S. Dist. LEXIS 1357, *19 (D. Me.)(despite its origin in products liability law, courts have expanded the economic loss doctrine to bar tort claims associated with contracts). As a result, the Egdall Defendants have failed to generate a genuine dispute of material fact regarding negligence. Summary judgment in favor of Legal-Ease is entered on Counterclaim Count VI.

18

**CONCLUSION**

The Court grants the Egdall Defendants' Motion for Partial Summary Judgment as to Counts 1, 2, 3, 4, 8, and 10 of the Complaint.[11] The Court enters summary judgment in favor of the Egdall Defendants as to Counts 1, 2, 3, 4, 8, and 10 of the Complaint.

The Edgall Defendants did not move for summary judgment as to Count 5 (Unjust Enrichment), Count 6 (Quantum Meruit), and Count 7 (Conversion) of the Complaint, and so those counts remain for trial. The Court denies the Egdall Defendants' Motion for Partial Summary Judgment in their favor as to Counterclaim Count I (Unpaid Wages pursuant to 26 M.R.S. § 626), and so Counterclaim Count I remains for trial. However, as explained below, Counterclaim Count I has been substantially narrowed, and remains intact only with respect to claims based on the Martel and R.D. matters.

The Court grants in part and denies in part Legal-Ease's Motion for Summary Judgment on the Counterclaim. As to Counterclaim Count I, the Egdall Defendants have generated a genuine dispute of material fact as to the Martel and R.D. matters. The Court thus denies Legal-Ease's Motion as it pertains to the Martel and R.D. matters. In all other respects, the Court grants Legal-Ease's Motion as to Counterclaim Count I. Therefore, as explained above, Counterclaim Count I has been substantially narrowed, and remains intact only with respect to wage claims based on the Martel and R.D. matters.

The Court grants Legal-Ease's Motion as to all the other Counterclaim Counts. Thus the Court enters summary judgment in favor of Legal-Ease on Counterclaim Counts II, III, IV, V and VI.

---

[11] As mentioned previously, the Complaint does not contain a Count 9.

19

In conclusion, Counts 5, 6, and 7 of the Complaint, and Counterclaim Count I (Martel and R.D. matters only), remain for trial.

Pursuant to M.R. Civ. P. 79(a), the Clerk is instructed to incorporate this Order by reference on the docket for this case.

So Ordered.


Dated: February 2, 2020                    _____/s_____
                                           Michael A. Duddy
                                           Judge, Business and Consumer Docket

20

**Legal-Ease, LLC, P.A.**

      **v.**

**Joan M. Egdall, and**
**Law Office of Joan Egdall, LLC**


**Legal-Ease, LLC, P.A.**                        Jeff Bennett, Esq.
                                            198 Maine Mall Rd.
                                            South Portland, ME 04106


**Joan M. Egdall, and**                     Thomas Douglas, Esq.
**Law Office of Joan Egdall, LLC**        90 Bridge St, Suite 100
                                            Westbrook, ME 04092